UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

EDISON VIDRO,

       Plaintiff,
 v.

SCOTT ERFE, AMONDA HANNAH,
Defendants both sued in their individual
capacities,

       Defendants.

3:18-cv-00567 (CSH)

JULY 5, 2018

# INITIAL REVIEW ORDER

**Haight, Senior District Judge:**

Plaintiff Edison Vidro, an inmate currently incarcerated at Osborn Correctional Institution in Somers, Connecticut, has brought this civil rights action *pro se* against various prison officials of Cheshire Correctional Institution, the prison where he was previously housed, in Cheshire, Connecticut. Vidro is suing Defendants Scott Erfe and Amonda Hannah in their individual capacities for monetary damages.

Magistrate Judge Garfinkel granted Vidro's motion to proceed *in forma pauperis* on March 7, 2018. *See* Doc. 9. The Court now reviews Vidro's Complaint to determine whether his claims are "frivolous" or may proceed under 28 U.S.C. § 1915A. For the following reasons, the Court dismisses his Complaint in part.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be

1

granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). *See also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the Court is not "bound to accept conclusory

---

[1] The Second Circuit has consistently adhered to the United States Supreme Court's seminal "plausibility" standard set forth in *Iqbal*. *See, e.g., Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017); *Christine Asia Co. v. Ma*, 718 F. App'x 20, 22 (2d Cir. 2017); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119-20 (2d Cir. 2013).

allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)) (quotation marks omitted). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally" (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004))); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (in reviewing a *pro se* complaint, the court "must liberally construe [the] pleadings, and must interpret [the] complaint to raise the strongest arguments it suggests").

However, despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678).

3

## II. FACTUAL ALLEGATIONS

The allegations in this Part are derived from the Complaint.

Vidro is a devout Native American, who at all times relevant to this matter was incarcerated at Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut. Complaint, Doc. 1, ¶ 6. Plaintiff participated in all Native American services at Cheshire, including smudging outdoors every day for up to twenty minutes, as permitted by the Department of Correction's ("DOC") "Native American Smudge Policy." *Id.* Vidro claims that the act of smudging is one of the most important aspects of the Native American religion. *Id.,* ¶ 7. It consists of burning sacred herbs, and waving the smoke over one's body as a cleansing technique and to carry the prayers "to the realm of the Creator." *Id.*

The DOC permits inmates to smudge if they purchase smudge supplies from the commissary. *Id.*, ¶ 8. At Cheshire, smudging is permitted outdoors only, at specified times: 4:00 a.m. on weekends and holidays, and at 5:45 a.m. on weekdays. This is so regardless of the temperature outside, or the weather. *Id.* Although inmates who work in various outdoor buildings are issued jackets and hats for their walks from building to building, Cheshire does not issue jackets or hats to those who wish to participate in smudging. *Id.*, ¶¶ 9-10. This is true despite the fact that smudgers remain outdoors each day in the winter for up to twenty minutes in the cold and dark. *Id.,* ¶ 10.

During the winter of 2016, Vidro smudged every day, in the extreme cold, without adequate outdoor clothing to protect him from the elements. *Id.*, ¶ 11. Vidro was only able to participate in the smudging rituals by going outdoors; if he were to remain indoors, he would not be able to practice his religion. *Id.*, ¶ 11. Vidro requested a jacket and hat upon several occasions that winter, but his requests were denied. *Id.*, ¶ 12. As a result, he became ill several times over the course of the

winter. *Id.,* ¶ 13. Vidro repeated his requests for outdoor attire as the winter of 2017 approached, but they were again denied. *Id.,* ¶ 14.

On January 27, 2018, Vidro filed a grievance regarding the denial of adequate clothing. *Id.*, ¶ 17. On March 14, 2018, the grievance was returned as "compromised," and signed by Defendant Hannah. *Id.*, ¶ 18. It stated that "[c]oats and hats will be provided for Native American Smudging in the AP area." *Id.* This was not done out of Defendants' good will, but rather in response to a separate lawsuit filed by a different inmate. *Id.,* ¶ 19. Per Administrative Directive 9.6, level one decisions must be made by the Unit Administrator, which was Warden Erfe. *Id.*, ¶ 20. Vidro's grievance was instead responded to by Defendant Hannah – who was not the unit administrator – on the last day of the thirty day response period provided for by the Administrative Directives. *Id.*

By continually denying jackets and hats to smudgers, Defendants have shown a lack of regard for Vidro's health and well-being, and for his rights. *Id.*, ¶ 21. Vidro has been forced to choose between risking his health to practice his religion and relinquishing his religious practice. *Id.*

### III. ANALYSIS

Vidro alleges that Defendants Erfe and Hannah violated Vidro's First Amendment right to the free exercise of religion and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, by denying him adequate winter clothing during smudge times, thereby effectively forcing Vidro to make a choice between practicing his religion in the cold, and staying inside without smudging. Vidro also alleges that Defendants violated his Fourteenth Amendment right to equal protection of the laws, by providing winter attire to working inmates but not to smudgers. Vidro seeks compensatory and punitive damages against the Defendants in their individual capacities. The Court will address each claim in turn.

## A. Free Exercise of Religion

Vidro alleges that he was forced to choose between practicing his Native American religion outdoors without adequate attire, and remaining indoors without being permitted to smudge; this allegation forms the basis for Vidro's claim that Defendants violated the Free Exercise Clause of the First Amendment.

The First Amendment guarantees the right to the free exercise of religion. The Free Exercise Clause of the First Amendment requires that government officials respect and not interfere with the religious beliefs and practices of the people. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) (internal citation omitted). However, an inmate's First Amendment right to the free exercise of religion is not absolute. "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, are the interests of prison officials charged with complex duties arising from administration of the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). Thus, in this context, the constitutionality of a challenged prison rule is judged under the reasonableness test; a challenged government action "passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quotation marks and citation omitted).

To state a Free Exercise Clause claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274–75. If the inmate states a plausible free exercise claim, the burden shifts to Defendants to show that the challenged conduct is reasonably related to legitimate penological interests; "the

burden remains with the prisoner to show that these articulated concerns were irrational." *Id.* at 275. (quotation marks and citation omitted).

Here, Vidro alleges that Defendants Erfe and Hannah have substantially burdened his sincerely held religious beliefs by refusing to provide adequate winter attire to practice smudging outside in the cold weather. Vidro alleges that the failure to provide a coat and hat during smudging times has exposed him to dangerous conditions, which, in turn, has affected his health. Therefore, he has been forced to choose between risking his health and relinquishing his religious practice. Such allegations are sufficient to permit a First Amendment Free Exercise Clause claim to proceed against Defendants Erfe and Hannah. *See Michalski v. Semple*, No. 3:16-CV-2039(VAB), 2018 WL 571848, at *5 (D. Conn. Jan. 28, 2018) (plaintiff inmate "sufficiently alleged that [prison officials] have substantially burdened his Native American religion by allegedly refusing to provide adequate winter clothing during smudging times" (collecting cases)).

Accordingly, the Court will allow Vidro's First Amendment claims to proceed against Defendants Erfe and Hannah in their individual capacities for money damages.

**B.     RLUIPA**

Vidro has pled that Defendants violated the RLUIPA denying him appropriate clothing to go outdoors to practice his religion. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . . is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Congress enacted RLUIPA to provide greater protection for religious exercise than the Free Exercise Clause of the First Amendment makes available. *Holt v. Hobbs*, 135 S. Ct. 853, 859-60 (2015).

"A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). However, RLUIPA "does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (citations omitted); *see also Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013) (same); *Tanvir v. Tanzin*, No. 16-1176, --- F.3d ---, 2018 WL 3096962, at *13 (2d Cir. May 2, 2018) (same). In this matter, Vidro seeks monetary damages against Defendants, not injunctive relief. Such a claim for damages pursuant to RLUIPA is barred. Accordingly, Vidro's RLUIPA claim will be dismissed.[2]

## C. Equal Protection

Vidro claims that the Defendants' provision of winter clothing to inmate workers but not to smudgers constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment.

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To state a violation of the Equal Protection Clause, a plaintiff must allege 'that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590–91 (S.D.N.Y. 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)); *see also Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977) (stating that where

---

[2] The Court notes that as Vidro is no longer housed at Cheshire, any request for injunctive would be moot. *See Salahuddin*, 467 F.3d at 272 ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

there is an alleged violation of the Equal Protection Clause, "the courts should allow the prison administrators the full latitude of discretion, unless it can be firmly stated that the two groups are so similar that discretion has been abused").

Vidro has not alleged facts that demonstrate that he was treated differently from similarly situated inmates, or that the reason for different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quotation marks and citation omitted). Vidro does not allege that inmates of other religions were provided adequate winter attire to engage in religious practices, while observers of Native American religious practices were denied that same opportunity on the basis of their religion. Thus, the Complaint does not sufficiently allege an equal protection claim. *See Michalski v. Semple*, No. 3:16-CV-2039 (VAB), 2017 WL 4475994, at *11 (D. Conn. Oct. 6, 2017) (finding that the *pro se* prisoner plaintiff failed to state an equal protection claim where he alleged a denial of certain foods on Native American holidays, but did not allege "that the DOC accommodates the dietary needs of inmates of other faiths, while denying comparable accommodations to Native American inmates" (citing *City of Cleburne Tex.,* 473 U.S. at 439)).

Accordingly, Vidro's Complaint fails to state an equal protection claim, and this claim will be dismissed against Defendants Erfe and Hannah. However, because the Court cannot rule out the possibility that Vidro could amend his Complaint to state a valid claim under the Fourteenth Amendment, *see Cruz v. Gomez*, 202 F.3d 593, 597 (2000), the Court will dismiss this claim without prejudice to renewal. Plaintiff will be given an opportunity to file an amended complaint alleging a section 1983 claim for damages based on a violation of his Fourteenth Amendment right to equal

protection. To state a claim for relief under the Equal Protection Clause in an amended complaint, Plaintiff must plead sufficient facts to demonstrate that inmates that practice the Native American religion were treated differently from inmates of different religions at Cheshire during the relevant time period, and that the reason for such different treatment was based on impermissible considerations.

## IV. CONCLUSION AND ORDERS

(1) For the reasons stated herein, the RLUIPA and Equal Protection Clause claims against Defendants Hannah and Erfe in their individual capacities are DISMISSED. The Equal Protection Clause claim is dismissed WITHOUT PREJUDICE.

(2) The Complaint may proceed against Defendants Erfe and Hannah pursuant to 28 U.S.C. § 1983 for a violation of the Free Exercise Clause of the First Amendment in their individual capacities, for money damages.

(3) To the extent that Vidro can remedy the failures in his Complaint noted by the Court in this Ruling and assert a claim pursuant to section 1983 for a violation of the Fourteenth Amendment's Equal Protection Clause, Vidro may file an amended complaint seeking to add that specific claim on or before **August 6, 2018.** If no amended complaint is filed, this case will proceed on Vidro's section 1983 claims based on a violation of the First Amendment's Free Exercise Clause, only.

For the proper governance of this case, the Court also makes these additional Orders:

(4) The clerk shall verify the current work addresses for Erfe and Hannah with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each Defendant at the confirmed address within **twenty-one (21) days**

of this Order, and report to the Court on the status of the waiver request on the **thirty-fifth (35) day** after mailing. If any Defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and the Defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(5) Erfe and Hannah shall file their response to the Complaint, either an answer or a motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed **on or before January 11, 2019**. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed **on or before February 28, 2019.**

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
July 5, 2018

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge