## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

EDISON VIDRO,

                Plaintiff,

  v.

SCOTT ERFE and AMONDA HANNAH,

                Defendants.

3:18-cv-00567 (CSH)

**SEPTEMBER 26, 2019**

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**Haight, Senior District Judge:**

*Pro se* Plaintiff Edison Vidro ("Plaintiff" or "Vidro"), a convicted prisoner currently incarcerated at the Osborn Correctional Institution in Somers, Connecticut, brings this 42 U.S.C. § 1983 action seeking damages from two Connecticut Department of Correction ("DOC") officials: Warden Scott Erfe and Deputy Warden Amonda Hannah ("the Defendants"). Doc. 1 ("Compl."). Vidro alleges that the Defendants violated his federal constitutional and statutory rights by denying him adequate winter clothing during his outdoor smudging rituals for the winter seasons of 2016 to 2017 and 2017 to 2018. *Id.* at ¶¶ 9-14. On July 5, 2018, this Court issued its Initial Review Order permitting Vidro's First Amendment free exercise of religion claim to proceed against the Defendants in their individual capacities for damages. Doc. 11 ("IRO") at 10. The Defendants answered the complaint on January 18, 2019. Doc. 21 ("Answer"). Among the affirmative defenses asserted, the Defendants claimed that Vidro failed to exhaust his administrative remedies before commencing this action, pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Id.* at 4.

Vidro filed a motion for summary judgment on April 2, 2019. *See* Doc. 23 at 1 ("Pl.'s Mot. Summ. J."); Doc. 23 at 3-5 ("Pl.'s Supp. Decl."); Doc. 23 at 8-13 ("Pl.'s Mem."). Vidro contends that the evidence establishes the Defendants' liability for placing a substantial burden on his ability to practice his Native American religion by denying him adequate winter clothing for outdoor smudging. Pl.'s Mem. in Supp. at 1, 9-13. The Defendants filed their opposition to the motion on April 16, 2019, contending that Vidro's motion "merely restate[s] the conclusory allegations in his Complaint and has not presented sufficient evidence to support his allegations." Doc. 24 ("Defs.' Opp'n"). The Defendants also claim that they are entitled to summary judgment because Vidro failed to exhaust his administrative remedies prior to commencing suit. *Id.* Vidro countered with a reply, asserting that the Defendants merely denied his allegations without presenting any evidence to support their opposition, and that the evidence shows that he exhausted his administrative remedies. Doc. 26 ("Pl.'s Reply").

On May 30, 2019, the Defendants filed their own motion for summary judgment on the ground that Vidro failed to exhaust his administrative remedies under the PLRA. Doc. 28 ("Defs.' Mot. Summ. J."); Doc. 28-1 ("Defs.' Mem."). Specifically, the Defendants contend that Vidro did not administratively challenge the denial of winter clothing for smudging until January 27, 2018, after which DOC officials agreed to provide such clothing for smudging in the Admitting and Processing ("A&P") area at the Cheshire Correctional Institution, where Vidro was confined at the time. Defs.' Mem. at 7-8. Thus, the Defendants argue that they did not have notice of Vidro's alleged constitutional deprivation until approximately two months prior to the commencement of this action. *See id.* Vidro countered in his written opposition that the January 27, 2018 grievance satisfied the exhaustion requirement, and any failure on his part to grieve the matter was the result

of his lack of knowledge of the DOC's Administrative Remedy procedure. Doc. 29 ("Pl.'s Opp'n");

Doc. 29-1 ("Pl.'s Opp'n Decl."); Doc. 29-3 ("Pl.'s Mem. in Opp'n").

For the reasons set forth below, because Vidro has failed to exhaust his administrative

remedies as required by the PLRA, Vidro's motion for summary judgment is DENIED and the

Defendants' motion for summary judgment is GRANTED.

## I.  STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as

to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a); *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012). A "genuine

issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might

affect the outcome of the suit under governing law." *Id.*

The moving party bears the initial burden of demonstrating the absence of a disputed issue

of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). If the initial burden is satisfied, the

burden then shifts to the non-moving party to present "specific evidence demonstrating the existence

of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d

Cir. 2015) (internal quotation marks and citation omitted). While the Court must view the record

in the light most favorable to the nonmoving party, and resolve all ambiguities and draw all

reasonable inferences in favor of the party against whom summary judgment is sought, *Anderson*,

477 U.S. at 255, the non-moving party nevertheless "must do more than simply show that there is

some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must support any assertion disputing the

veracity of a fact or existence of an alleged dispute with specific citation to the record materials. Fed. R. Civ. P. 56(c)(1).[1]

Because Plaintiff is proceeding pro se, the Court must read his submissions "liberally" and interpret them "to raise the strongest arguments" that they suggest. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Nonetheless, "[p]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks omitted).

## II.   FACTS

Vidro is a devout Native American, who at all times relevant to this matter was incarcerated at Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut while the Defendants were employed there as correctional officials. Doc. 28-4 ("Defs.' 56(a)(1) Stmt.") ¶¶ 1-2; Doc. 29-6 ("Pl.'s 56(a)(2) Stmt.") ¶¶ 1-2. Plaintiff participated in all Native American services at Cheshire, including smudging outdoors every day, as permitted by the DOC's "Native American Smudge Policy." Compl. ¶¶ 6-7; Doc. 1 at 8 ("Pl.'s Ex. A"). Smudging consists of burning sacred herbs and waving smoke over one's body as a cleansing technique. Compl. ¶ 7. The DOC's policy permits inmates to smudge once per day outdoors for up to twenty minutes depending on circumstances as determined by the Unit Manager or another appropriate supervisor. Pl.'s Ex. A.

---

[1] This standard applies uniformly where, as here, the Court is presented with cross-motions for summary judgment. *Larsen v. Prudential Ins. Co. of Am.*, 151 F. Supp. 2d 167, 171 (D. Conn. 2001) (citing *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988)). "The movant's burden does not shift when cross-motions for summary judgment are before the Court. Rather, each motion must be judged on its own merits." *Id.* (citing *Ass'n of Int'l Auto. Mfrs., Inc. v. Abrams*, 84 F.3d 602, 611 (2d Cir. 1996)).

Vidro alleges that, during the winter of 2016-2017, he smudged outdoors daily without winter attire such as jackets and hats because officials at Cheshire did not provide such attire for smudging purposes. Compl. ¶¶ 9-11. He also alleges that he requested a jacket and hat on several occasions during the winter of 2016-2017, but his requests were denied. *Id.* at ¶¶ 12-14. Vidro claims that this situation forced him to choose between practicing an important religious ritual or remaining indoors during the cold winder months. *Id.* at ¶ 11.

Vidro contends that he was never provided any verbal or written instructions regarding the grievance procedure, and only became aware of the grievance process when another inmate informed him of it in spring 2017. Pl.'s 56(a)(2) Stmt. ¶ 3. Consequently, during his confinement at Cheshire, Vidro did not file any administrative grievances until April 24, 2017. *Id.*; Doc. 28-3 ("Aff. of Monica Boyd-Carter") ¶ 5. On that date, Vidro filed a grievance regarding the whereabouts of a personal possession. Aff. of Monica Boyd-Carter ¶ 5; Doc. 28-3 at 5-6 (Inmate Administrative Grievance dated April 24, 2017).[2]

Vidro filed a second grievance while at Cheshire on January 27, 2018, which was received by DOC officials on January 29, 2018. Aff. of Monica Boyd-Carter ¶ 7; Doc. 28-3 at 11-14 (Inmate Administrative Grievance dated January 27, 2018); Doc. 1 at 10 ("Pl.'s Ex. B"). In that written grievance, Vidro stated the following:

> It is winter and extremely cold outdoors at smudge call, which I attend everyday. The thin tans and thermal [are] not warm enough to protect me from the brutal cold. I need a coat and a hat. I've already become sick once and wish not to become sick again. Enfield closed. [T]here must be hundreds of jackets there that could easily be brought here and wouldn't cost anything.

---

[2] Vidro later withdrew that grievance. Doc. 28-3 at 4 (Inmate Administrative Grievance dated April 24, 2017).

Doc. 28-3 at 11. Vidro requested that Cheshire officials issue him a coat and hat or make them available in the A&P room for smudging. *Id.* He attached to his grievance a letter he had sent to Deputy Warden Hannah on January 14, 2018, requesting that jackets be placed in the A&P room for daily smudging. *Id.* at 13. The letter includes a response at the bottom stating that Cheshire officials do not provide coats and hats for smudging.[3] *Id.* The January 27, 2018 grievance constituted the only grievance Vidro filed regarding his ability to practice smudging at Cheshire. Pl.'s 56(a)(2) Stmt. ¶ 4.

On March 14, 2018, an official at Cheshire responded to Vidro's January 27, 2018 grievance, stating the following: "A review of your level one grievance was conducted and has been compromised. Coats and hats will be provided for Native American smudging in the A[&]P area." Doc. 28-3 at 11. The official checked off a box at the bottom of the document indicating that Vidro had "exhausted DOC's Administrative Remedies." *Id.* Afterward, several jackets and hats were placed in the A&P room at Cheshire for use during smudging. Doc. 29-4 ("Decl. of Marco A. Michalski") ¶ 3.

### III. ANALYSIS

#### A. Exhaustion of Administrative Remedies

Because "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court[,]" *Jones v. Bock*, 549 U.S. 199, 211 (2007), the Court addresses Defendants' motion for summary judgment before turning to Vidro's motion for summary judgment on the merits of his claim, if necessary.

---

[3] It is not clear from the exhibit whether Hannah wrote the response denying Vidro's request for winter attire.

In support of their motion for summary judgment, Defendants contend that Vidro failed to exhaust his administrative remedies prior to commencing this action, as required by the PLRA. Defs.' Mem. at 1. Specifically, they argue that Vidro did not file any administrative grievances regarding the denial of adequate winter clothing for smudging at Cheshire until January 27, 2018, after which DOC officials agreed to grant his request for such clothing. *Id.* at 6-7. Thus, any First Amendment claim stemming from the denial of adequate clothing for the winter of 2016-2017 is unexhausted, and his claim for the winter of 2017-2018 was resolved in his favor. *Id.* Vidro argues that the January 27, 2018 grievance satisfied the exhaustion rule and, alternatively, any failure to exhaust in 2016 or 2017 was the result of his unawareness of the DOC's administrative grievance procedure. Pl.'s Mem. in Opp'n at 2-6.

The Court agrees with the Defendants that there exists no genuine issue of material fact that Vidro failed to properly exhaust his administrative remedies prior to commencing suit. Summary judgment in favor of the Defendants is therefore warranted.

### 1. Rule of Exhaustion

The PLRA provides in relevant part that "[n]o action shall be brought with respect to prison conditions under [§] 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted." 42 U.S.C. § 1997e(a). In enacting § 1997e, Congress sought to afford prison officials time and opportunity to address complaints internally and reduce the quantity, and improve the quality, of prisoner suits. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "An 'untimely or otherwise procedurally defective administrative grievance' . . . does not constitute proper exhaustion." *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 83-84

7

(2006)).  Because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion [,]" the exhaustion inquiry requires that courts review the relevant state procedure and the prisoner's grievance to determine whether the prisoner has complied with those procedures. *Jones*, 549 U.S. at 218.

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion."  *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1858 (2016).  More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S.Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]"); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (adopting *Ross*'s "framing [of] the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate").  In the PLRA context, grievance procedures are "available" if they "are 'capable of use' to obtain 'some relief for the action complained of.'"  *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  Ultimately, it is the province of the court to determine whether such circumstances exist in a given case.  *See, e.g.*, *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements."); *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011).

Defendants bear the initial burden of proving that the administrative remedies available to Plaintiff were not exhausted prior to the initiation of this civil action.  *See Jones*, 549 U.S. at 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). Plaintiff must then establish that the grievance procedure was unavailable to him under *Ross*.  *Jones*, 549 U.S. at 216.

### 2.    Exhaustion Under DOC Administrative Directive 9.6

In this case, Vidro was required to comply with the grievance procedure set forth in the Connecticut Department of Correction Administrative Directive 9.6 ("Directive 9.6").[4] Specifically, Vidro's claim was  grievable using the Inmate Grievance Procedure outlined in section 6 of Directive 9.6. *See* Directive 9.6, § 4(A) ("The Inmate Grievance Procedure provides an administrative remedy for all matters subject to the Commissioner's authority that are not specifically identified in Sections 4(B) through 4(I) of this Directive.").

Prior to filing an inmate grievance, the Inmate Grievance Procedure requires that the inmate seek informal resolution, first by attempting to resolve the issue verbally and then by submitting a written Inmate Request Form, CN 9601.  Directive 9.6, § 6(A).  If the inmate is not satisfied with the informal resolution offered,  or if the official fails to respond to the Inmate Request Form within fifteen business days, he may then submit a Level-1 grievance. *Id.* at § 6(C).  The Level-1 grievance must be submitted within thirty calendar days "of the occurrence or discovery of the cause of the grievance." *Id.*  The inmate must also "attach CN 9601, the Inmate Request Form," to the Level-1 grievance, or, if there is a "valid reason" that the Inmate Request Form is not available, "include an explanation indicating why CN 9601, Inmate Request Form, is not attached." *Id.*  If the inmate is not satisfied with the response to his Level-1 grievance or does not receive a timely response, he may then file an appeal. *Id.* at § 6(K)-(M).

### 3.    Vidro's Efforts to Exhaust

Defendants argue that Vidro's January 27, 2018 grievance does not satisfy the exhaustion requirement because it was untimely with respect to his claims for the winter of 2016-2017, and was

---

[4]  There is no dispute that this grievance procedure was in place at all relevant times.

resolved in Vidro's favor with respect to the winter of 2017-2018. Vidro counters that his verbal

complaints to prison officials coupled with his January 27, 2018 grievance suffice to establish

exhaustion.

Insofar as Vidro argues that he exhausted his administrative remedies based on his verbal

complaints to prison officials, "[t]he law is well-settled that informal means of communicating and

pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."

*Timmons v. Schriro*, No. 14-CV-6606, 2015 WL 3901637, at \*3 (S.D.N.Y. June 23, 2015) (citation

omitted); *see also, e.g.*, *Rawls v. Rosenfield*, No. 916CV0582LEKCFH, 2017 WL 7050648, at \*7

(N.D.N.Y. Nov. 28, 2017) ("It is well-established in the Second Circuit that any informal resolution

or relief outside of the administrative procedures does not satisfy exhaustion requirements."), *report*

*and recommendation adopted*, No. 916CV0582LEKCFH, 2018 WL 542249 (N.D.N.Y. Jan. 23,

2018); *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (holding that regardless whether prison

officials know of the plaintiff's complaints in a "substantive sense," procedural exhaustion of

remedies must still occur); *Day v. Chaplin*, 354 Fed.Appx. 472, 474 (2d Cir. 2009) (summary order)

(noting that informal letters sent to prison officials "do not conform to the proper administrative

remedy procedures.").

Even if the verbal complaints had put prison officials on notice of the subject matter of

Plaintiff's grievance, notice, in and of itself, cannot satisfy the exhaustion requirement. *See Macias*,

495 F.3d at 44. In *Macias*, the Second Circuit analyzed how the Supreme Court's decision in

*Woodford v. Ngo*, 548 U.S. 811 (2006) affected Second Circuit precedent that had allowed inmates

"to procedurally exhaust their claims by taking enough informal steps to put prison officials on

notice of their concerns, regardless of whether they utilize the prison's formal grievance procedures."

*Id.* (quoting *Braham v. Clancy*, 425 F.3d 177, 183 (2d Cir. 2005)) (internal quotation marks and citation omitted). The Second Circuit held that "after *Woodford*, notice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance' and '[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.'" *Id.* (quoting *Woodford*, 548 U.S. at 95). The *Macias* court determined that the plaintiff did not satisfy the exhaustion requirement by submitting inmate request forms and complaining informally to prison officials. *Id.* Similarly here, Vidro's informal communications outside of the proper regulatory channels do not satisfy PLRA's exhaustion requirement because even if they alerted prison officials to the substance of Vidro's complaints, notice alone does not satisfy the exhaustion requirement. *See Macias*, 495 F.3d at 44. Indeed, the outcome in this case illustrates the rationale underlying the proper exhaustion requirement: when Vidro followed the appropriate administrative channels by filing a grievance in January 2018, the grievance was resolved in his favor with the arrangement that coats and hats be provided for smudging in the AP area.[5]

Turning, then, to Vidro's Level-1 grievance, the Court finds that Vidro failed to properly exhaust his administrative remedies. In *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), the United States Supreme Court held that exhaustion under the PLRA requires "proper exhaustion," meaning full

---

[5] Vidro contends that his grievance was not resolved in his favor because "[h]ad the grievance in question been resolved in my favor, it would of [sic] been 'upheld,' not 'compromised,' as AD 9.6 defines 'upheld' as 'the application for administrative remedy is granted.'" Pl.'s Mem. in Opp'n at 4. While Plaintiff's rendering of the facts is accurate - the grievance resolution was documented as "compromised" rather than "upheld" - in this case the semantic distinction points to no material difference. Plaintiff's grievance stated that the desired resolution would be to "[i]ssue me a coat and hat, or make them available in the A/P room for use while smudging." Doc. 29-6 at 2. Shortly thereafter, it is undisputed that coats and hats were provided for smudging in the A&P area. Under these circumstances, there is no genuine dispute that the grievance was resolved in Vidro's favor.

compliance with all administrative procedures and deadlines. *See also Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). "An 'untimely or otherwise procedurally defective administrative grievance' . . . does not constitute proper exhaustion." *Snyder*, 428 F. App'x at 91 (quoting *Woodford*, 548 U.S. at 83-84). To properly exhaust a § 1983 claim in Connecticut, a prisoner must comply with *all* steps set forth in Directive 9.6, including deadlines and utilization of each step of the administrative appeal process. *Id.* (citing *Jones*, 549 U.S. at 218).

It is undisputed that Vidro failed to submit an Inmate Request Form prior to submitting his grievance, as required by Directive 9.6 § 6(A). When Vidro did, in fact, file his Level-1 grievance, he then failed to comply with Directive 9.6 § 6(C) : he did not attach "attach CN 9601, the Inmate Request Form," nor did he "include an explanation indicating why CN 9601, Inmate Request Form, is not attached." He therefore failed to "properly" "us[e] all steps that the [prison grievance system] h[eld] out," as required under *Woodford*. 548 U.S. at 90.

Furthermore, Directive 9.6 prescribes a specific time limit for a prisoner to file a grievance: a Level-1 grievance must be submitted within thirty calendar days "of the occurrence or discovery of the cause of the grievance." Directive 9.6, § 6(c); *Carter v. Revine*, No. 3:14-CV-01553 (VLB), 2017 WL 2111594, at *15 (D. Conn. May 15, 2017) (drawing a "stark contrast" between Directive 9.6, which imposes a "30-day statute of limitations" on the grievance process, and Directive 8.9, which "contains no statute of limitations for the initial filing of a Review of an Administrative Issue"). Vidro acknowledges that the January 27, 2018 grievance constituted the only grievance he filed at Cheshire concerning the denial of adequate winter clothing for outdoor smudging. *See* Pl.'s 56(a)(2) Stmt. ¶¶ 3-4. It is also undisputed that Vidro first requested winter clothing to wear while smudging in the winter of 2016-2017 – approximately a year before filing the January 27, 2018

grievance. Compl. ¶ 12. Vidro's grievance thus fell outside of the 30-day time limit set forth in Directive 9.6, § 6(c). *See*, *e.g.*, *Osborn v. Williams*, No. 3:14-CV-1386 (VAB), 2017 WL 6731714, at *6 (D. Conn. Dec. 29, 2017) (holding that the plaintiff, who did not file a grievance within 30 days of the incident at suit, "failed to file his grievance in a timely manner, and, thus, he failed to exhaust his administrative remedies" pursuant to Directive 9.6 § 6(C)).[6]

In *Riles v. Buchanan*, 656 F. App'x 577 (2d Cir. 2016), the Second Circuit considered whether a prisoner-plaintiff had exhausted his administrative remedies in a factually analogous § 1983 case. The plaintiff had attempted to exhaust his administrative remedies through verbal complaints, but did not submit an Inmate Request Form prior to submitting his Level-1 grievance or provide an explanation for failing to attach the Inmate Request Form to his Level-1 grievance. *Id.* at 580. The plaintiff also attempted to file a new grievance after being informed of these procedural deficiencies, but filed his renewed grievance months after the thirty-day period set forth in Directive 9.6 had lapsed. *Id.* The Second Circuit affirmed the district court's holding that the plaintiff had failed to "properly exhaust" the administrative remedies available to him before filing suit in the district court. *Id.*

The circumstances here are materially indistinguishable: Vidro did not file or explain the absence of an Inmate Request Form with his Level-1 grievance, and his grievance was untimely. The Defendants have therefore satisfied their burden of showing that the administrative remedies

---

[6]    The briefing by both parties assumes that the Court will treat the winters of 2016-2017 and 2017-2018 as separate "claims" for purposes of exhaustion. Given that the core underlying facts and legal claim are identical for both winters, I see no reason to "restart the clock" each year when assessing the timeliness of Plaintiff's grievance. Even if I were to treat each winter as an independent claim, however, the outcome remains the same: Plaintiff's claim is untimely for winter 2016-2017, and is not cognizable because it was resolved favorably for the winter of 2017-2018, *see* Note 5, *supra.*

available to Plaintiff were not *properly* exhausted prior to the initiation of this civil action. *See Williams*, 829 F.3d at 122 ("Proper exhaustion demands compliance with [a prison grievance system's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." (internal quotation marks and citation omitted)).[7]

### 4.    Availability of Administrative Remedies Under *Ross*

Vidro argues in the alternative that his failure to exhaust should be excused because he requested winter clothing from prison officials on multiple occasions prior to January 2018, but did not file a grievance before that time because he was unaware of the grievance process until April 2017. He emphasizes in particular that he was never given verbal or written information about the grievance procedure: "[e]ven if the grievance process was 'on the books,' it is routinely hidden, or not talked about or made clear to the population." Pl.'s Mem. in Opp'n at 3.

"An inmate may be excused from the exhaustion requirement only if administrative remedies were not in fact available." *Shehan v. Erfe*, No. 3:15-CV-1315 (MPS), 2017 WL 53691, at *6 (D. Conn. Jan. 4, 2017) (citing *Ross*, 136 S. Ct. at 1858). Until recently, courts in this District followed a three-part test established by the Second Circuit in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004). Under the *Hemphill* test, a plaintiff's failure to exhaust may be excused, *inter alia*, if a

---

[7] The fact that a prison official checked a box at the bottom of the January 2018 grievance stating that Vidro "ha[d] exhausted DOC's Administrative Remedies" does not alter this conclusion. Pl.'s Mem. in Opp'n at 3-4. The Court can reasonably infer that the checked box conveyed that Cheshire officials were providing him with the specific remedy he sought - winter clothing for smudging in the A&P room - and consequently that there was no reason for Vidro to appeal the official's decision to the next level under Directive 9.6 because he had received a favorable resolution. Doc. 28-3 at 11. The checked box does not, however, speak to the timeliness of Vidro's request for purposes of filing a civil action for damages.

14

plaintiff established that his or her failure to exhaust was justified by "special circumstances." *Id.*

at 686. Applying *Hemphill'*s "special circumstances" exception, the Second Circuit subsequently

intimated that an inmate may be able to demonstrate that grievance procedures were unavailable to

him because "he was not timely provided an inmate handbook" and therefore "was unaware of the

grievance procedures contained within it or . . . did not understand those procedures." *Ruggiero*, 467

F.3d at 178. In the wake of this suggestion, district courts considered whether an inmate was aware

of grievance procedures when adjudicating availability for purposes of PLRA exhaustion. *See, e.g.,*

*Angulo v. Nassau Cty.*, 89 F. Supp. 3d 541, 552-53 (E.D.N.Y. 2015) (finding plaintiff had not shown

grievance procedure was not "available" because, among other things, plaintiff had not shown that

he was unware of it); *Abdallah v. Ragner*, No. 12 Civ. 8840 (JPO), 2013 WL 7118083, at *3

(S.D.N.Y. Nov. 22, 2013) ("An administrative remedy is not 'available' for purposes of the PLRA

if prisoners are not informed that the remedy exists."); *Walker v. Vargas*, No. 11 Civ. 9034 (ER),

2013 WL 4792765, at *5 (S.D.N.Y. Aug. 26, 2013) (same).

In *Ross*, however, the Supreme Court limited meaningfully the scope of the availability

inquiry. *Ross*, 136 S. Ct. at 1862. A court adjudicating issues of exhaustion under the PLRA may

no longer take into account any "special circumstances" that it might believe justify a prisoner's

failure to comply with the requirements of the administrative process available to him. *See Ross*,

136 S. Ct. at 1856-58 (abrogating holding of *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), which

allowed for special-circumstance consideration); *Williams*, 829 F.3d at 123. ("[A] court may not

excuse a failure to exhaust, even to take such circumstances into account."). Instead, a district court

is limited to consideration of the PLRA's "textual exception to mandatory exhaustion": whether

administrative remedies were "available" to a prisoner. *Id.*

The *Ross* Court provided three examples "of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.[8]

 Post-*Ross*, a plaintiff must show more than mere unawareness of an existing grievance procedure; he must show that he was unaware because, for example, prison officials threatened him for use of the grievance system or affirmatively misrepresented the process. *See Ross*, 136 S. Ct. at 1859-60; *see also Briscoe v. D'Agata*, No. 14-cv-7384, 2016 WL 3582121, at *7 (S.D.N.Y. June 28, 2016) (a plaintiff must show "that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact").

In making his argument, Vidro does not directly invoke any one of *Ross*'s three unavailability examples. Vidro does not allege, for example, that the applicable grievance procedure "operate[d] as a simple dead end — with officers unable or consistently unwilling to provide any relief to

_____

[8] In *Williams*, the Second Circuit noted that, "the three circumstances discussed in Ross do not appear to be exhaustive[.]" 829 F.3d at 123 n.2. The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

aggrieved inmates," or was "so opaque" as to be "practically speaking, incapable of use." *See Ross*, 136 S. Ct. at 1859. Nor does Vidro indicate that "prison administrators thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.[9] Under these circumstances, Vidro's unawareness of the prison's grievance procedure cannot suffice to show that the procedure was "unavailable" within the meaning of *Ross*. *See, e.g.*, *Porter v. Uhler*, No. 917CV0047MADTWD, 2019 WL 2479000, at *14 (N.D.N.Y. Feb. 19, 2019), *report and recommendation adopted*, No. 9:17-CV-47 (MAD/TWD), 2019 WL 1292226 (N.D.N.Y. Mar. 21, 2019) (rejecting plaintiff's argument that the grievance procedure was unavailable because plaintiff was unaware of it, and had neither been directed to utilize the procedure nor given a copy of the Inmate Handbook); *Galberth v. Washington*, No. 14-CV-0691, 2017 WL 3278921 (S.D.N.Y. Jul, 31, 2017) ("A plaintiff post-*Ross* must show more than mere unawareness of an existing grievance procedure; a plaintiff must show that he was unaware because, for example, officers were unable or unwilling to make him aware, or prevented him from becoming aware 'through machination, misrepresentation, or intimidation.'").[10]

Finally, Vidro argues that the only reason Cheshire officials granted his request for coats and hats to be made available in the A&P room is because of a § 1983 action filed by another inmate at Cheshire based on the same claim. *See* Pl.'s Mem. in Opp'n at 7-8. In *Michalski v. Semple*, No.

---

[9] Additionally, Vidro has not alleged that he was not timely provided with instructions regarding Directive 9.6 because officers were unwilling or unable to provide him with the information he sought out, or prevented him from accessing grievance instructions "through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60. Thus, even if the parties dispute whether Vidro was informed about the grievance procedure, this dispute is not material, and does not prevent the Court from entering summary judgment for Defendants.

[10] Indeed, all cases cited by the Plaintiff in his Memorandum of Law were decided prior to *Ross*'s disavowal of the "special circumstances" exception. They are therefore inapposite here.

3:16-CV-2039 (DJS), 2018 WL 571848, at *5 (D. Conn. Jan. 28, 2018), the Court permitted another

Cheshire inmate's First Amendment free exercise claim to proceed against DOC officials based on

the denial of winter clothing in 2016 and 2017. The plaintiff in that case filed a TRO asking that

the court order Cheshire to provide appropriate winter clothing for smudging, but withdrew the TRO

on March 14, 2018, after he was assured by an Assistant Attorney General that winter clothing

would be provided. *See* Decl. of Marco A. Michalski.[11] However, the DOC's motivation for

providing winter clothing in the A&P room in 2018 has no bearing on Vidro's legal obligation to

exhaust his claims under the PLRA. The fact remains that he did not properly notify the Defendants

in this case of the nature of his First Amendment claim until January 27, 2018 – more than a year

after the alleged constitutional deprivation occurred – and failed to comply with procedural

requirements at that time. Thus, any claim regarding the denial of winter clothing was not properly

exhausted, and cannot proceed under the terms of the PLRA.

In light of the foregoing, the Court finds that there is no genuine issue of material fact that

Plaintiff failed to exhaust his administrative remedies with respect to his First Amendment claims

against the Defendants, and that the failure is not excused under *Ross*. Summary judgment for the

Defendants is appropriate. Vidro's motion for summary judgment, which is addressed to the merits

of the claim, is therefore not reached.

### 4.  Dismissal With Prejudice

The granting of summary judgment to the Defendants results in the dismissal of Vidro's

Complaint. The Court must consider whether that dismissal should be with or without prejudice.

---

[11] That case ultimately settled out of court and was dismissed in March 2019. *See* Decl.
of Marco A. Michalski.

Dismissal without prejudice on a failure to exhaust administrative remedies grant of summary judgment is appropriate where "a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004). Conversely, dismissal with prejudice is appropriate "where a plaintiff is effectively barred from administrative exhaustion." *McCoy v. Goord*, 255 F. Supp. 2d 233, 252 (S.D.N.Y. 2003); *see also Berry*, 366 F.3d at 88.

Here, Vidro is foreclosed from exhausting his administrative remedies under Directive 9.6: he filed his only grievance after the thirty-day statute of limitations had lapsed, and DOC policies do not contemplate a cure for an untimely filed grievance. Additionally, even if Vidro's grievance had been timely, he failed to submit the requisite Inmate Request Form, and any attempt to do so now would be time-barred. *See* Directive 9.6 § 6(C). Because Vidro's failure to exhaust is at this point incurable, this case will be dismissed with prejudice. *See, e,g., Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 240 (W.D.N.Y. 2010) (dismissing claim with prejudice "[s]ince the time limits for plaintiff to file an administrative appeal have long since passed, administrative remedies are no longer available to him[.]"); *Ramos v. New York*, No. 9:17-CV-0259 (BKS/CFH), 2018 WL 7133696, at *5 (N.D.N.Y. Dec. 27, 2018) (recommending dismissal with prejudice where the plaintiff failed to exhaust his Eighth Amendment conditions of confinement claim and the time to do so "had long since passed"), *report-recommendation adopted,* 2019 WL 330869, at *1 (N.D.N.Y. Jan. 25, 2019); *Porter v. Uhler*, No. 917CV0047MADTWD, 2019 WL 2479000, at *15–16 (N.D.N.Y. Feb. 19, 2019) (recommending dismissal with prejudice where more than seventeen months had passed since the plaintiff's complaint had been resolved), *report and recommendation adopted*, No. 9:17-CV-47 (MAD/TWD), 2019 WL 1292226 (N.D.N.Y. Mar. 21, 2019) *cf. Berry*,

366 F.3d at 87 (2d Cir. 2004) ("*If the time permitted for pursuing administrative remedies has not expired*, a prisoner . . . can cure the defect by exhausting [the available remedies] and reinstating his suit." (emphasis added)).

## IV. **CONCLUSION AND ORDERS**

Based on the foregoing, Plaintiff's motion for summary judgment [Doc. 23] is DENIED, and the Defendants' motion for summary judgment [Doc. 28] is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE. The Clerk is directed to enter judgment in favor of the Defendants and close this case.

**It is SO ORDERED.**

Dated: September 26, 2019
        New Haven, Connecticut

*/s/ Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States District Judge